COMMONWEALTH *vs.* DAVID WHITE
(and five companion cases [1]).

Suffolk.   December 3, 1974. — April 1, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Evidence,* Judicial discretion, Leading question, Hostile witness.
*Practice, Criminal,* Mistrial.   *Constitutional Law,* Due process of
law.

There was no abuse of discretion or ground for a mistrial or denial of
due process of law in allowing the prosecutor at a criminal trial to
put leading questions to witnesses for the Commonwealth as to
whether they had made certain statements to the prosecutor, such
questioning being claimed by the defendants to imply that the
witnesses had made statements to him inconsistent with their
testimony, where the questions were not shown to have been put
in bad faith or without foundation, the answers to the questions
were in the negative, and the judge repeatedly instructed the jury
that the negative answers furnished no evidence.   [283-285]

INDICTMENTS found and returned in the Superior Court
on October 10, 1972.

The cases were tried before *Roy,* J.

After review by the Appeals Court, the Supreme Ju-
dicial Court granted leave to obtain further appellate
review.

*Joseph J. Balliro* for the defendant O'Master.

*Alfred E. Nugent* for the defendant White.

*John T. Gaffney,* Assistant District Attorney (*Thomas
E. Dwyer,* Assistant District Attorney, with him) for the
Commonwealth.

---

[1] Two of the companion cases are against David White and three
are against John O'Master.

WILKINS, J.   After the Appeals Court affirmed the judgments against each of the defendants (see *Commonwealth* v. *White*, 2 Mass. App. Ct. 258 [1974]), we granted limited further appellate review.  We declined to give further consideration to the asserted error of the trial judge in denying the defendants' motions to inspect the minutes of the grand jury, but granted further review on each of the other four contentions considered by the Appeals Court.   We agree with the Appeals Court's conclusions and affirm the judgments.   We shall discuss only the prosecutor's alleged improper questioning of the witnesses Leahy and Bucelwicz.   We adopt the reasoning of the Appeals Court on the remaining two areas of objection. [2]

This case turned largely on the credibility of the victim Paaso.   He testified that on September 23, 1972, at approximately 3 A.M., he entered a bar in Brighton (the Whistle Stop), accompanied by Leahy, one Maley and a German shepherd dog.   Following a discussion with the defendants, he was cut and stabbed by the defendant White in circumstances which would have rendered the defendant O'Master jointly responsible for the stabbing, if Paaso's testimony were believed.   According to Paaso, Leahy was a few yards away at the time of the assault. In the course of the incident Paaso noticed O'Master strike the dog.   The mutilated body of the dog was found later that day in an adjacent parking lot by Bucelwicz, a maintenance man at a nearby motel.

The prosecutor put Leahy on the stand, although he suspected that Leahy would lie concerning his presence at the scene of the crime.   Leahy was not a productive witness for the prosecution.   He denied his presence at

---

[2] These two subjects are covered in the portions of the Appeals Court opinion numbered 4 and 5.   In support of the conclusion reached by the Appeals Court in the fifth part of its opinion, concerning the prosecutor's final argument, we add our recent opinion in *Commonwealth* v. *Valliere*, 366 Mass. 479, 494-495 (1974).

the Whistle Stop at the time Paaso was stabbed. Leahy was asked leading questions both before and after the judge declared him to be a hostile witness. He denied various circumstances which, if true, tended to show that he was at the Whistle Stop and that, immediately after the stabbing, he obtained funds in order to leave the State. All of the questions relating to his possible presence at the Whistle Stop and his plan to leave concerned proper topics of cross-examination of this witness. Moreover, there is no reasonable question as to the prosecutor's motives or the propriety of asking these questions, because evidence tending to refute Leahy's denials was introduced with respect to all but one of these various questions.

Leahy was asked next if he was afraid of the defendants. Over objection and exception, he answered in the negative. The prosecutor then asked Leahy: "Did you ever tell me that you were?" Again a negative answer was given, after objection and exception by the defendants. The defendants immediately moved for a mistrial. At a conference at the bench the prosecutor, on questioning by the judge, stated that the witness had made the statement to him. The motion for mistrial was denied. In the course of a cross-examination in which considerable latitude was allowed, Leahy denied again that he had told the prosecutor that either of the defendants had threatened him.

The witness Bucelwicz testified next on direct examination by the prosecutor. He said that, with the assistance of the defendant White, he dragged the body of the German shepherd to an empty parking lot. Over objection and exception, he denied that the prosecutor had asked him about talking to the defendants concerning this case. He agreed that he had talked to the prosecutor about the case. He then was asked: "Do you recall saying to me that you didn't want to testify because you would be killed?" He answered in the negative,

after the defendants' objections were overruled. The judge denied a motion for a mistrial and immediately stated to the jury, as he had done previously on several occasions, "[W]ith a negative answer, you are not to conclude that the question is in any way evidence." Next, Bucelwicz denied telling the prosecutor that the defendants "would have a contract out on . . . [him] and . . . [his] family." Another motion for a mistrial was then denied. Bucelwicz further denied telling the prosecutor that the defendant White had said to him: "Don't forget, you did not see me that day." The judge again warned the jury that a negative answer did not carry any weight and admonished the prosecutor, as he had done previously, to move on to some other question.

The defendants argue that it was prejudicial error to allow the prosecutor to question Leahy and Bucelwicz in a way which implied that they had made statements to him which were inconsistent with their testimony. They argue further that it was an abuse of discretion to deny their motions for a mistrial after the questions were answered in the negative and that in these circumstances they were denied their constitutional right to a fair trial. [3]

There was no abuse of discretion in permitting the prosecutor to cross-examine these witnesses or in permitting the prosecutor to put leading questions to them. *Commonwealth* v. *LaFrance*, 362 Mass. 53, 57 (1972).

---

[3] The defendant White's assignments of error concerning the questioning of Leahy are not stated in constitutional terms. But with respect to the questioning of Bucelwicz, he asserts that he was denied due process of law because the prosecutor's statements "were so inflammatory as to preclude the Defendant from obtaining a fair trial."

The defendant O'Master's assignments raise a due process fair trial argument based on prejudice arising from the questioning of Bucelwicz. Unlike White, O'Master bases assignments on due process and Sixth Amendment confrontation claims concerning the questioning of Leahy. There is no merit to the Sixth Amendment confrontation argument (see *Nelson* v. *O'Neil*, 402 U. S. 622 [1971]), and the issue has not been argued here.

Questions concerning a witness's fear of testifying to the truth, threats by a defendant and statements of a defendant urging a witness to lie are appropriate in the judge's discretion. However, the cross-examiner should have a reason for asking any such questions and should be prepared to disclose that reason to the judge. "The attempt to communicate impressions by innuendo through questions which are answered in the negative, for example . . . 'Did you tell Mr. X that . . .?' when the questioner has no evidence to support the innuendo, is an improper tactic which has often been condemned by the courts." A. B. A. Standards Relating to The Prosecution Function, § 5.7 (d) (Approved Draft 1971). See Wigmore, Evidence, § 1808 (2) (3d ed. 1940). However, there was no showing of any violation of this requirement in this case.

There is nothing improper in interviewing a witness before trial, or, subject to the judge's discretion, in cross-examining a witness concerning discrepancies between his in-court and out-of-court statements. Indeed, where the witness is one's own, such questions may be a prerequisite to the admission of prior inconsistent statements for the purpose of impeaching that witness. G. L. c. 233, § 23. *Commonwealth* v. *LaFrance, supra.* There is no compulsion on the cross-examiner, however, to offer such impeaching evidence. In fact if no third person is present during a conversation between the witness and the prosecutor, the prosecutor has no basis for introducing the witness's prior inconsistent statement unless he obtains leave to withdraw from the case in order to do so. A. B. A. Standards, *supra,* § 3.1 (b).

The defendants were not denied the fair trial to which they constitutionally were entitled. There was no impropriety in calling these witnesses. See *Commonwealth* v. *Festo,* 251 Mass. 275, 279 (1925). The questions themselves were permissible. *Commonwealth* v. *Devereaux,* 256 Mass. 387, 396 (1926). *Commonwealth* v. *Granito,* 326 Mass. 494, 498 (1950). They did not

relate to extraneous or immaterial matters. See *Commonwealth* v. *Homer*, 235 Mass. 526, 535 (1920). There is no showing that they were put in bad faith or without foundation. See *Commonwealth* v. *Granito*, *supra*; *Commonwealth* v. *Marsh*, 354 Mass. 713, 720 (1968). The judge instructed the jury at least six times during the trial, and again in his charge, that a negative answer to a question provided no evidence for their consideration.

A criminal defendant is not denied a fair trial by rigorous cross-examination of witnesses concerning their prior inconsistent statements, unless the examination is shown to have been conducted in bad faith or without foundation. The defendants have cited no analogous authority in support of their constitutional contention. From a consideration of the entire transcript we see no support for the constitutional argument advanced by the defendants.[4]

*Judgments of the Superior Court affirmed.*

---

[4] The prosecutor was not alone in using questions which could have influenced the jury, even if answered negatively. Counsel for O'Master asked Paaso in cross-examination whether he recalled having a discussion with O'Master "concerning your involvement in narcotics, in selling narcotics?" The prosecutor objected "unless there's going to be proof." Counsel for O'Master said there certainly would be such proof. The judge allowed the question but instructed the jury that "[i]f the reply is negative, ladies and gentlemen, I will advise you once again, as I did earlier, there is no evidence in the question." Paaso answered in the negative. No evidence of Paaso's connection with narcotics ever was presented.

In his cross-examination of Paaso, who testified that he was a former professional football player, counsel for White asked whether he had assisted in the collection of a $2,000 debt owed to someone else. On objection by the prosecutor, counsel for White stated that the question would have some connection, but none was ever shown.