COMMONWEALTH vs. DOUGLAS JOHNSON.

Suffolk. March 10, 2000. - May 16, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Assault with Intent to Rape. Indecent Assault and Battery on a Retarded Person. Evidence,* Cross-examination, Bias of government witness, Prior conviction. *Witness,* Bias, Cross-examination. *Practice, Criminal,* Judicial discretion, Impeachment by prior conviction.

Where, at a criminal trial, the defendant made no plausible showing, through an offer of proof or based on evidence already admitted, to support his claim of bias of a witness based on asserted racial prejudice, the judge did not err in denying the defendant's request to cross-examine the witness generally on his possible racial bias against the defendant. [537-541]

At the trial of indictments for assault with intent to commit rape and indecent assault and battery on a mentally retarded person, the judge erred by permitting the prosecutor to impeach the defendant's credibility, in contravention of the provisions of G. L. c. 233, § 21, Fourth, with a conviction for a traffic violation for which only a fine had been imposed; however, no substantial risk of a miscarriage of justice arose from the error, or from counsel's failure to have objected properly to it, where the defendant's only conviction, operating an uninsured motor vehicle, was trivial, and in the context of the case the jury would have understood its magnitude. [541-543]

INDICTMENTS found and returned in the Superior Court Department on December 6, 1995.

The cases were tried before *Sandra L. Hamlin,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Amanda Lovell,* Assistant District Attorney, for the Commonwealth.

SPINA, J. A jury found the defendant, Douglas Johnson, guilty of assault with intent to commit rape, G. L. c. 265, § 24, and indecent assault and battery on a mentally retarded person, G. L. c. 265, § 13F. On appeal, the defendant argues that he is

entitled to a new trial because (1) the judge refused to permit any cross-examination of the Commonwealth's principal witness as to the witness's possible racial bias, and (2) the judge erroneously permitted the prosecutor to impeach the defendant's credibility with a prior conviction of a traffic offense on which only a fine was imposed. We transferred the case to this court on our own motion. We affirm the convictions.

1. *Background.* The defendant was employed as a case manager at a group home for mentally retarded persons in Winthrop. He is an African-American in his early thirties, married, with two children. He had been employed at the group home for three years and worked his way up from counsellor to case manager. The victim was one of four residents who lived in the first-floor apartment at the home where the defendant worked. Those residents were severely or profoundly mentally retarded adults. The victim is microcephalic: her skull was too small for her brain to develop properly, causing her disability. She suffered seizures at least daily, and wore a helmet to prevent injury when she fell. She was unable to communicate verbally and required the presence of a staff person at all times. The defendant was one of the workers assigned to give her care.

Erik Stockwell was a case manager at the same group home, but he was assigned to work with the four residents who lived in the second floor apartment. The second floor residents were less severely disabled than those who lived in the first floor apartment. An interior staircase at the rear of the building connected the apartments. Stockwell, who is white, was friendly with the defendant and socialized with him and his wife. Stockwell enjoyed working with the defendant.

On September 16, 1995, the first-floor residents and staff went on an outing between approximately noon and 3:30 P.M. The victim, who had not been feeling well, did not participate, and the defendant stayed behind with her. During that time Stockwell took the rear staircase down to the first-floor apartment to borrow some sauce for dinner that night. As he walked down the hall to the kitchen, he saw the victim bent over a hope chest in one of the bedrooms, her buttocks exposed. The defendant was behind her, touching the small of her back with one hand and his erect penis with the other. Stockwell entered the room and the defendant, with a shocked expression on his face, quickly tucked his penis back in his pants. Stockwell turned and left. The defendant followed and awkwardly asked Stockwell not to tell anyone, backed up with a mild threat.

Stockwell, who was a "[m]andated reporter,"[1] did not report the incident, primarily out of concern for the defendant and his family, although he knew he was required to make a report. Troubled, he spoke to some people about the incident, including another mandated reporter, on November 9, 1995, who reported Stockwell for failing to report the matter. The investigation thus began which led to the indictments before us.

2. *Limitation on cross-examination.* The defendant argues that the judge erred by denying him any opportunity to cross-examine Stockwell, the Commonwealth's principal witness, as to his possible racial bias against the defendant. Defense counsel properly requested a sidebar conference before broaching the subject of racial bias with Stockwell on cross-examination, given the potentially inflammatory nature of the subject. He requested the opportunity "to just ask a generic question regarding any possible racial issues between [the witness] and [the defendant]." The judge asked whether counsel had any basis to believe that such an issue existed between them. Counsel indicated that a potential witness "seem[ed] to insinuate that there may have been some racial issues, racial tensions [but] I don't know for sure." When asked by the judge what it was that the witness said, counsel replied that he did not "want to put words in her mouth." The prosecutor reported that he had spoken to the witness and "she told me directly there were no racial issues between [Stockwell and the defendant]." The prosecutor also informed them that the witness said "she didn't like the fact that [Stockwell] asked her whether or not she dated [b]lack men." The judge asked defense counsel if he had anything to add, and counsel said he did not. The judge then ruled that "on the state of the record at this time . . . I'm not going to allow you to ask that question. You can renew your request if things change." The defendant did not renew his request, and there is nothing in the record to indicate that circumstances had changed. Moreover, the defendant testified and never implied that Stockwell had ever shown any racial animus toward him.

---

[1]General Laws c. 19C, § 1, defines a "[m]andated reporter" as "any . . . person employed by . . . a private agency providing services to disabled persons who, in his professional capacity, shall have reasonable cause to believe that a disabled person is suffering from a reportable condition." A "[r]eportable condition" is defined as "a serious physical or emotional injury resulting from abuse, including unconsented to sexual activity."

A criminal defendant has the constitutional right to cross-examine a prosecution witness to show that the witness is biased. See *Davis* v. *Alaska*, 415 U.S. 308, 316-317 (1974); *Commonwealth* v. *Tam Bui*, 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995). The right is not absolute, however, and the judge has broad discretion to determine the scope and extent of cross-examination. See *Commonwealth* v. *Gagnon*, 408 Mass. 185, 192 (1990); *Commonwealth* v. *Barnes*, 399 Mass. 385, 393 (1987). "If, *on the facts*, there is a possibility of bias, even a remote one, the judge has no discretion to bar *all* inquiry into the subject" (emphasis added). *Commonwealth* v. *Tam Bui, supra* at 400. A defendant must make a "plausible showing" to support his claim of bias. *Id.* at 401, 402. See *Commonwealth* v. *LaVelle*, 414 Mass. 146, 153 (1993); *Commonwealth* v. *Barnes, supra.*

The defendant did not make a plausible showing that there was any issue of racial bias on the part of Stockwell. Even assuming that Stockwell did ask the potential witness if she dated black men, the import of the question was too attenuated to create a remote possibility of racial bias. The defendant failed to meet his burden of showing that "testimony of more than minimal value . . . might have been forthcoming." *Commonwealth* v. *Fordham*, 417 Mass. 10, 19-20 (1994). The judge did not abuse her discretion by excluding questions that would not likely lead to any relevant evidence. See *Commonwealth* v. *Tam Bui, supra.*

The defendant stresses that it is an abuse of discretion to refuse to permit all questioning on cross-examination aimed at exposing generalized racial bias. His principal authority, *Chipman* v. *Mercer*, 628 F.2d 528 (9th Cir. 1980), does not support that proposition. The *Chipman* court made careful note of the "extensive offer of proof" made at trial in support of the request to cross-examine a witness for racial bias, and referred to the highly detailed content of that offer in its reasoning. *Id.* at 529-530. The court said that "the confrontation clause does not prevent the trial court from weighing the offer of proof to determine its probative value to the trier of fact and its probable effect on fair and efficient conduct of the trial." *Id.* at 531. The court did not hold, as the defendant implies, that a defendant's right to cross-examine on racial bias is absolute. The right does not exist in a vacuum. The court held that "[g]iven *this* offer of proof, it was required that the defendant be permitted to examine

a witness to determine if she harbored a bias or prejudice . . ." (emphasis added). *Id.* at 532.

Likewise, the majority of cases cited by the defendant are inapposite because, where cross-examination for racial bias was or should have been permitted, either there was evidence of bias or counsel established a good faith basis to inquire; where cross-examination was not permitted and the ruling was affirmed, there was no basis for such inquiry. See *Commonwealth v. Franklin*, 376 Mass. 885, 905 (1978) (cross-examination for racial bias had basis in evidence, but exclusion of cumulative questioning within judge's discretion); *Brown* v. *State*, 779 P.2d 801, 805 (Alaska Ct. App. 1989) (extensive voir dire of police witness produced no evidence that witness might be biased; thus no error in exclusion of question as to witness's racial bias before jury); *People* v. *Taylor*, 190 Colo. 210, 212-213 (1976) (black defendant's cross-examination for racial bias of white police officer who arrested him was followed by defense witnesses who testified officer used racial slurs when he arrested them); *Moreno* v. *United States*, 482 A.2d 1233, 1237-1238 (D.C. 1984), cert. denied, 469 U.S. 1226 (1985), citing *Chipman* v. *Mercer, supra* (error to preclude all cross-examination for racial bias of complainant who had used racial slur during conversation with defense investigator); *Ransey* v. *State*, 100 Nev. 277, 278-279 (1984), citing *Chipman* v. *Mercer, supra* (where guilt established overwhelmingly by other evidence, harmless error to preclude black defendant from cross-examining white witness for racial bias who, evidence had shown, used racial epithet in referring to defendant). The only jurisdictions that seemingly support the defendant's argument are California and Florida. See *In re Anthony P.*, 167 Cal. App. 3d 502, 511, 513 (1985) (defendant entitled to threshold level of questioning without any basis); *Jackson* v. *State*, 585 So. 2d 420 (Fla. Dist. Ct. App. 1991) (abuse of discretion standard applied; evidentiary basis for questioning unclear); *Smith* v. *State*, 404 So. 2d 167, 169 (Fla. Dist. Ct. App. 1981). To the extent that those cases fail to recognize the importance of the offer of proof in *Chipman* v. *Mercer, supra*, a decision on which they rely, we find them unpersuasive. "Confrontation questions must be resolved on a case-by-case basis based on examination of all circumstances and evidence." *Id.* at 530. See *Commonwealth v. Tam Bui, supra* at 401; *Commonwealth* v. *Kirouac*, 405 Mass. 557, 561-562 (1989).

The right to cross-examine is not without limits, and it "must be accommodated to other legitimate interests." *Commonwealth v. Clifford*, 374 Mass. 293, 305 (1978). The Supreme Court has said that reasonable limits may be placed on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Court has also noted that "[t]here is a duty to protect [a witness] from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate . . . ." *Alford* v. *United States*, 282 U.S. 687, 694 (1931).[2] See *Commonwealth* v. *Rooney*, 365 Mass. 484, 496 (1974) ("The judge presiding over the trial of a case has the power to keep the examination of witnesses within the limits of common decency and fairness, and he has the duty to exercise that power promptly and firmly when it becomes necessary to do so"). Courts have a legitimate interest in excluding from the trial of cases reference to matters without support in the evidence, or for which no legitimate basis is offered. This is especially true with respect to matters tending to inflame, such as racial bias. Cf. *Commonwealth* v. *Phoenix*, 409 Mass. 408, 425 (1991) ("improper for the prosecutor to invite the jury to impute racial animosity into a situation without evidence to support it"). "Appeals to racial, religious, or ethnic prejudices are especially incompatible with the concept of a fair trial because of the likelihood that such references will 'sweep jurors beyond a fair and calm consideration of the evidence.' " *Commonwealth* v. *Mahdi*, 388 Mass. 679, 693 (1983), quoting *Commonwealth* v. *Graziano*, 368 Mass. 325, 332 (1975). See *Commonwealth* v. *Kines*, 37 Mass. App. Ct. 540, 541 (1994), and cases cited. It is error to "communicate impressions by innuendo through questions which are answered in the negative . . . when the questioner has no evidence to support the innuendo." *Commonwealth* v. *Fordham, supra* at 20, quoting *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975). The principle applies to defense counsel and prosecutors alike. See, e.g., *Commonwealth* v. *Christian*, 430 Mass. 552, 561 (2000), quoting *Commonwealth* v. *White, supra* at 285 (prosecutor may not conduct cross-examination "in bad faith or

---

[2]As previously noted, counsel acted properly by requesting a sidebar conference before broaching the subject of racial bias in front of the jury. Cf. *Commonwealth* v. *Moorer, post* 544, 547 n.3 (2000).

without foundation"); *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 748, 752 (1980) (defense question to victim whether bar where he had worked was frequented by homosexuals properly excluded as irrelevant and immaterial, where there was no evidence victim had made any homosexual advances). Where defense counsel failed to demonstrate, either through an offer of proof or evidence that had been admitted (and there was no voir dire), a reasonable expectation of eliciting any evidence of racial bias on the part of Stockwell, exclusion of his questions on the subject was proper. See *Commonwealth* v. *Christian, supra*; *Commonwealth* v. *Tam Bui, supra*; *Commonwealth* v. *White, supra*. Contrast *Commonwealth* v. *Moorer, post* 544, 547 (2000) (white victim's testimony that he did not think black defendant's face quite fit the Massachusetts Institute of Technology cap he was wearing created a remote possibility of bias sufficient to warrant further inquiry). The judge reasonably could have concluded that counsel's questioning would have interjected by innuendo issues of race which were unwarranted by the evidence.[3] *Commonwealth* v. *Fordham, supra*.

3. *Impeachment by prior conviction.* The defendant argues that the judge erred by permitting the prosecutor to impeach his credibility with evidence that he had been convicted of operating an uninsured motor vehicle, for which a fine only was imposed. General Laws c. 233, § 21, Fourth, provides that "the record of . . . conviction for a traffic violation upon which a fine only was imposed shall not be shown for such purpose unless [the witness] has been convicted of another crime or crimes within five years of the time of his testifying."[4] The use of the prior conviction for impeachment of the defendant was error. See *Commonwealth* v. *Burnett*, 417 Mass. 740, 742-743 (1994). The defendant objected at the time, but did not state the proper basis for the objection. The issue has not been preserved for appellate review, so we look to determine whether the error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 636-637 (1997), citing *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

[3]Rule 3.4 (e) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1389 (1998), states: "A lawyer shall not: . . . (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence . . . ."

[4]The parties have not briefed the issue of the applicability of G. L. c. 233, § 21, Fourth, to the crime of operating an uninsured motor vehicle, G. L. c. 90, § 34J. We assume, without deciding, that § 21, Fourth, is applicable.

The defendant also argues that the failure to object constituted ineffective assistance of counsel. Claims of ineffective assistance of counsel can also be reviewed under the substantial risk standard. See *Commonwealth* v. *Bart B.*, 424 Mass. 911, 914 (1997). We assume that, had counsel objected on the precise ground now advanced on appeal, the judge would have been alerted to the statute forbidding the use of such a conviction for impeachment purposes, and that counsel's failure to do so "[fell] measurably below [behavior] which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The Appeals Court has reversed convictions because of a substantial risk of a miscarriage of justice in cases where defendants or their principal witnesses had been impeached by prior convictions that were inadmissible by reason of a failure to meet the requirements of G. L. c. 233, § 21. In each case, however, the circumstances were far different from here. In *Commonwealth* v. *Jackson*, 45 Mass. App. Ct. 666 (1998), the defendant's sole witness was impeached by stale convictions of larceny of a motor vehicle, possession of burglary tools, and malicious destruction of property, felonies punishable by imprisonment from ten to fifteen years. *Id.* at 668 & n.2. The judge also never gave the appropriate limiting instructions to the jury on the use of prior convictions. *Id.* See *Commonwealth* v. *Gallagher*, 408 Mass. 510, 516 (1990). The Appeals Court concluded that the prejudicial effect of the admission of those prior convictions, not alone but in combination with other error, created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Jackson*, *supra* at 670-672. In *Commonwealth* v. *Childs*, 23 Mass. App. Ct. 33 (1986), *S.C.*, 400 Mass. 1006 (1987), *S.C.*, 31 Mass. App. Ct. 64 (1991), *S.C.*, 413 Mass. 252 (1992), at his first trial the defendant was impeached by evidence of stale convictions, including seven counts of larceny under $100, two counts of breaking and entering (one in the nighttime), three counts of armed robbery, robbery, and escape from a penal institution. *Id.* at 34 n.1. The Appeals Court concluded that counsel's failure to raise the staleness issue amounted to ineffective assistance. *Id.* at 35-36. In *Commonwealth* v. *Rossi*, 19 Mass. App. Ct. 257 (1985), the defendant testified on direct examination to three assault and battery convictions on which no sentences had been imposed. The defendant was being tried for assault with intent to commit

rape, and the issue at trial was identification. The defendant presented a significant alibi defense supported by the testimony of three witnesses. The three assault and battery convictions involved female victims, and given the similarity to the crimes being tried, the Appeals Court concluded that the convictions should not have been divulged to the jury. *Id.* at 259. See *Commonwealth* v. *Chase*, 372 Mass. 736, 750 (1977) (defendant's recourse is to request careful limiting instructions that evidence does not go to guilt but only to credibility).

In the case at bar there was no other error, the prosecutor never mentioned the conviction in his closing argument, and the judge gave proper limiting instructions. Most important, the prior conviction involved an offense that likely had no effect on the jury. In *Commonwealth* v. *Boudreau*, 362 Mass. 378 (1972), we affirmed a conviction of manslaughter in connection with the death of a fourteen month old child where the defendant had been impeached by evidence of a conviction of operating a motor vehicle after suspension of his license. We said that, "even if [the conviction] were erroneously admitted, it was harmless beyond a reasonable doubt . . . in the light of the dubious significance of the violation, and in the light also of the admission of the defendant's conviction of assault and battery." *Id.* at 382. We recognize that a jury, relying on their collective experience and common sense, understand that conviction of some crimes may have a significant impact on credibility, while others will have little or none. See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 335 (1980), and cases cited. We are satisfied that even in the context of a credibility duel, as this was, the jury would appreciate that in the greater scheme of things the defendant's only conviction, operating an uninsured motor vehicle, was trivial and not something to be viewed with a wary eye. After searching the record, we conclude that there was no substantial risk of a miscarriage of justice.

*Judgments affirmed.*