NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-316

COMMONWEALTH

vs.

FREDERICK FORESTEIRE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Frederick Foresteire, was convicted of two counts of indecent assault and battery on a person over fourteen (indecent assault and battery).[1] He argues on appeal that the judge erred in (1) restricting cross-examination and precluding impeachment evidence that would have demonstrated the victim's bias, and (2) giving an unwarranted curative instruction following defense counsel's closing argument. We affirm.

---

[1] The defendant was found not guilty on two counts of assault and battery as well as a third count of indecent assault and battery. Two additional counts of indecent assault and battery were severed from the other charges and are not part of the present appeal.

Background.  The jury could have found the following facts from the evidence.  In 2016, the defendant, who was the superintendent of schools in Everett, hired the victim to work in the administration building at the school department.  From the outset of the victim's employment, the defendant "would always have something to say about what [the victim] was wearing," and "would parade" her around the administration building.  Rather than use her name, he would call her "Ms. Argentina."  He "would direct [her] to open [her] shirt.  He would direct [her] to lift [her] skirts."  On more than fifty occasions, he called the victim while she was operating the switchboard and asked her "inappropriate things," such as "what [she had] done sexually to men," what people had done to her sexually, what color bra she was wearing, whether she "ever performed blowjobs," whether she would "ever perform a blowjob on him," and if she would "allow him to go down on [her]."  The victim refused to answer his questions, only responding "no" when he would question her.  She disclosed the content of the defendant's calls to one of her coworkers (coworker).

From June 2017 through the end of the victim's employment with the school department, the defendant grabbed, squeezed, or touched her "butt" on myriad occasions.  The victim did not consent to any of the touchings, and the defendant's conduct made her uncomfortable, nervous, and caused her to shake.  On

2

two of these occasions, the coworker witnessed the defendant put his hand on the "lower portion" of the victim's buttocks. The coworker testified that the victim "was almost paralyzed" when this occurred.

The victim testified that in June of 2017, the defendant directed her into an office, blocked the doorway, and told her to pull her shirt down. The victim did not do so, but the defendant pulled her shirt down, exposing the victim's breast. The defendant then put his hands behind his back, leaned down, and put his mouth on her breast. The victim also testified that in April 2018, the defendant directed her into an office and again pulled down her shirt and bra and exposed her breasts. At some point, as a result of the defendant's comments and actions, the victim changed the way she dressed and began wearing pants, layering her clothing, wearing "holstered bras," and "just covering up."

In June of 2018, the victim received a "layoff letter" from the defendant and stopped working at the school department. In November 2018, the victim filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) and filed an amended complaint in 2019. In or around February 2019, the victim reported the incidents to the police. She did not initially report the incidents to the police because the

defendant "had his hand in everything" and "was almost more powerful than the mayor."

The defendant contested each of the allegations and most of the evidence delineated above. The defense focused on undermining the victim's credibility through extensive cross-examination and through the testimony of several witnesses called by the defense who all testified that they never saw the defendant parade the victim around the office, touch the victim, or engage in any of the alleged offensive behavior. The witnesses all testified that they observed no changes to the victim's behavior or demeanor during the relevant timeframe at issue. The defendant also testified and denied the allegations.

The jury convicted the defendant of the two counts of indecent assault and battery that involved the touching of the victim's buttocks observed by the coworker. The jury found the defendant not guilty of all other counts, including those involving the alleged exposing and touching of the victim's breast.

Discussion. 1. Restrictions on cross-examination. The defendant contends that the judge impermissibly restricted his cross-examination of the victim and his examination of defense witnesses in violation of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. See Commonwealth v. Grenier, 415 Mass. 680, 686

4

(1993) (defendant has "constitutional right to present evidence of bias through any competent means").

The Sixth Amendment and art. 12 of the Massachusetts Declaration of Rights provide defendants with an opportunity for cross-examination; they do not guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Commonwealth v. Cong Duc Le, 444 Mass. 431, 438 (2005), quoting United States v. Owens, 484 U.S. 554, 559 (1988).  See Commonwealth v. Edwards, 444 Mass. 526, 535 (2005) ("the right to cross-examine adverse witnesses under art. 12 is not absolute").  Rather, judges have "broad latitude to direct the course of a trial, and this judicial discretion extends to limiting and otherwise controlling cross-examination."  Commonwealth v. Vardinski, 438 Mass. 444, 451 (2003).  "Those limits are 'based on concerns about . . . harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant.'"  Commonwealth v. Chicas, 481 Mass. 316, 320 (2019), quoting Commonwealth v. Johnson, 431 Mass. 535, 540 (2000). "Moreover, a judge has discretion to limit questions that involve collateral issues and questions where the connection to the evidence of bias is too speculative."  Chicas, supra.  A judge's decision to restrict cross-examination "is not subject to reversal unless the defendant can show he was prejudiced by

too narrow a restriction in his cross-examination rights" (citation omitted).  Commonwealth v. Syrafos, 38 Mass. App. Ct. 211, 219 (1995).

In the present case, we discern no abuse of discretion. The defendant first argues that the judge sustained numerous objections to defense counsel's cross-examination that was designed to show that the victim "was motivated to falsely accuse [the defendant] of misconduct because she needed money." The defendant claims that absent these limitations on cross-examination, he could have elicited information that would show that the victim's predicament was more dire than she had suggested and "would have supported an inference that she was desperate for money, suggesting a motive to fabricate her account of [the defendant's] conduct."  The defendant's argument ignores the extensive and thorough cross-examination of the victim during which defense counsel elicited, inter alia, that the victim was having "financial difficulty"; was "severely financially strapped"; struggled with bills; was behind on her rent; was behind on her bills in general; was denied in her attempt to obtain a loan from Everett Credit Union; and had financial difficulties that predated her filing of the MCAD complaint.  Defense counsel also compelled the victim to acknowledge that in her affidavit filed in support of her amended MCAD complaint, she sought money and attorney's fees.

6

Put simply, the transcript reveals that defense counsel conducted a thorough and effective cross-examination of the victim, and elicited testimony that challenged the victim's credibility and demonstrated potential bias due to her financial situation. To the extent that the judge sustained some objections to certain questions regarding the victim's financial situation, the rulings were justified based on form, lack of foundation, or involvement of collateral matters. See Chicas, 481 Mass. at 322.

The defendant next argues that the judge "sustained objections to whether [the victim] told . . . investigators in the case that [the defendant] had been responsible for the denial of her loan." Contrary to this claim, on cross-examination the victim admitted that she was denied in her attempt to obtain a loan, was approached by the defendant about that loan, told investigators that the defendant told her, "[y]ou help me or I'll help you," and was denied the loan the next day. From this testimony, the jury could have inferred that the victim informed investigators of her belief that the defendant was involved with or responsible for the denial of her loan. Here again, to the extent that the judge sustained certain objections to this line of cross-examination, we discern no abuse of discretion and, in any event, no prejudice. See Syrafos, 38 Mass. App. Ct. at 219.

7

The defendant next argues that the judge limited his examination of defense witnesses.  Specifically, he contends that "[i]t was critical that five witnesses scattered throughout the building who saw [the victim] every day . . . did not see [the defendant] parade [her] around the building," and did not observe any changes or anything remarkable as to her dress or demeanor during the time of the alleged assaults.  Contrary to this claim, the record reflects that all five witnesses called by the defendant testified to the effect that during the entire period of their employment, they never saw the defendant "parading [the victim] around," never heard him making inappropriate comments to her, never noticed her wearing extra clothing or trying "to be covering up her entire body," and never noticed any change in her wardrobe or the "way she dressed."[2]  We thus discern no abuse of discretion.

2.  <u>Curative instruction</u>.  Finally, the defendant contends that the judge abused her discretion in providing a curative instruction at the end of defense counsel's closing argument.

---

[2] The trial transcript reflects a hard-fought trial during which defense counsel challenged the credibility of the victim and other witnesses, elicited testimony that demonstrated potential bias, called witnesses whose testimony contradicted that of the victim and other witnesses who testified in the Commonwealth's case-in-chief, and presented a comprehensive and strategic defense.  Indeed, the jury found the defendant not guilty on three of the five counts.

The argument is unavailing.  The instruction reminded the jury that it is their memory, not the memory of the prosecutor or defense counsel that controls.  The instruction also noted that defense counsel's statements as to "what the law is or is not" is "something you need to take from [the judge]," and that statements of defense counsel regarding facts not in evidence could not be considered.  This instruction, provided in response to, inter alia, defense counsel's description of what constitutes reasonable doubt, and his statements regarding the content of witness testimony and other evidence, was an accurate

statement of law and did not constitute an abuse of discretion.[3]

Commonwealth v. Souza, 492 Mass. 615, 636 (2023).

Judgments affirmed.

By the Court (Neyman,
D'Angelo & Allen, JJ.[4]),

*Paul Little*

Clerk

Entered:  February 4, 2026.

---

[3] At oral argument, the defendant's appellate counsel noted that in response to prosecutorial mistakes in closing argument, judges often provide general or tepid curative instructions, or none at all; yet here, the judge gave a specific instruction in response to the defendant's trial counsel's closing argument. We of course agree that judges should, in appropriate circumstances, provide specific curative instructions.  See Commonwealth v. Rodriquez, 49 Mass. App. Ct. 370, 374 (2000) (noting importance of giving timely curative instruction).  In any event, our decision is limited to the present case, and here, the judge acted well within her discretion in providing a brief and timely curative instruction.

[4] The panelists are listed in order of seniority.