COMMONWEALTH *vs.* DONYELL HOWELL.

No. 97-P-419.

Suffolk. December 14, 1998. - March 24, 2000.

Present: ARMSTRONG, SMITH, & RAPOZA, JJ.

*Practice, Criminal,* Cross-examination by prosecutor, Argument by prosecutor. *Evidence,* Cross-examination, Bias, Consciousness of guilt, Rebuttal, Credibility of witness. *Witness,* Intimidation, Credibility. *Due Process of Law,* Identification.

At the trial of an indictment, the judge erred in admitting in evidence the defendant's father's refusal or failure to cooperate with police, where the father was under no obligation to bring his son to the police station for questioning, and where the father's bias in favor of his son had been elicited; the error did not create a substantial risk of a miscarriage of justice in circumstances in which the prosecutor did not argue that the evidence demonstrated the defendant's consciousness of guilt and in which the error was not shown to have materially influenced the jury verdicts. [47-48]

At the trial of an indictment, the judge erred in allowing the prosecutor improperly in questioning a defense witness to raise, through innuendo having no basis in evidence, the impression that the witness attempted to intimidate or bribe a prosecution witness, but, in the circumstances, the error was not prejudicial. [48-50]

At the trial of an indictment in which the defendant introduced photographs of two other men on the theory that their description matched that of the two perpetrators, the Commonwealth on rebuttal was properly allowed to introduce evidence that the victims had been shown those photographs and had not recognized them as the perpetrators. [50-51]

At the trial of an indictment, the prosecutor's unnecessary remark that the police were "not on trial here" did not create a substantial risk of a miscarriage of justice; error, if any, in the prosecutor's comments on the credibility of witnesses did not warrant the grant of a new trial in light of the judge's careful instructions on credibility; and error from an argument of the prosecutor that was potentially burden-shifting was cured by the judge's specific instruction. [51-52]

INDICTMENT found and returned in the Superior Court Department on January 25, 1995.

A pretrial motion to suppress evidence was heard by *Maria I. Lopez*, J., and the case was tried before her.

*Julie Ann Boyden* for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

SMITH, J. On January 25, 1995, a Suffolk County grand jury returned an eleven-count indictment against the defendant, Donyell Howell. He was charged with three counts of armed robbery, three counts of conspiracy to commit armed robbery, armed assault with intent to rob, armed assault with intent to murder, assault and battery with a dangerous weapon (a handgun), mayhem, and unlawful possession of a firearm. The victims of the alleged robberies were Sadrac Noel, Perry Silveira,[1] and Eric Holness. The victim of the counts charging the defendant with armed assaults with intent to rob and murder, assault and battery with a dangerous weapon, and mayhem was Letri Nguyen.[2]

After a jury trial, the defendant was found guilty of (1) robbing Silveira, but not guilty of the other two robberies; (2) guilty of all the crimes against Nguyen except the count charging the defendant with assault with intent to murder; and (3) guilty on the count charging unlawful possession of a firearm. At sentencing, the conspiracy charges were placed on file without a change of plea and with the defendant's consent.

On appeal, the defendant raises three issues. He argues that the judge committed error in allowing the introduction of alleged irrelevant and prejudicial evidence of the defendant's father's conduct. He also claims that the judge committed error in allowing the Commonwealth to introduce rebuttal evidence with regard to certain photographs placed in evidence by the defendant. Finally, the defendant claims that the prosecutor's closing argument was so improper that it warrants a new trial.

*Facts*. The Commonwealth introduced the following evidence

[1]Silveira is identified as Sylveira in both briefs. However, at the trial he spelled his name to the court reporter as Silveira. We use that name in this opinion.

[2]Also indicted in connection with the robberies were the codefendant, Keith Mills, and his sister, Kenisha Mills. Keith Mills was charged with robbing Noel and Holness, and the jury returned not guilty verdicts on both of those charges. At a separate trial, Kenisha Mills was acquitted of robbing Holness but convicted of robbing Silveira. Her conviction was reversed by this court. See *Commonwealth* v. *Mills*, 47 Mass. App. Ct. 500 (1999).

at trial. Sometime during the evening of November 28, 1994, Eric Holness, an employee of Joseph's Pizza, delivered a pizza to 15 Ames Street in the Franklin Field housing project in the Dorchester area of Boston. As he was walking back to his truck, two men, whom he later identified as Keith Mills and the defendant, robbed him. After Mills took all of Holness's money, he beat him with a gun. When the two men left, Holness returned to Joseph's Pizza and reported the robbery to the owner. Fearing retaliation, the owner did not report the crime to the police.

Sometime during the next week, a man ordered food from Joseph's Pizza to be delivered to 130 Stratton Street in the Franklin Field housing project. The man gave a telephone number, but when Holness checked the number, he learned that it had been disconnected. Moments later, a woman called and told Holness that the man who called did not have a telephone but could be reached at a number she then provided. When Holness called that number, the woman confirmed the order and asked him to bring change for a $50 bill.[3] The owner decided not to make the delivery.

On the evening of December 5, 1994, Perry Silveira, the owner of Pete's Courthouse Deli in Dorchester, received a call from a woman ordering food to be delivered to 128 Stratton Street. The woman gave the telephone number belonging to Keith Mills's mother. The woman asked Silveira to bring change for a $50 bill.

When Silveira arrived at the address, he was waved down by a young man whom he recognized as someone who had come into the store the previous week to pick up a menu. He later identified that man as the defendant. The man pulled out a silver .38 caliber handgun and robbed Silveira of over $150. He then told Silveira to leave, which Silveira did. After Silveira returned to his store, he decided not to notify the police because he assumed that they would not be able to recover his money.

On the evening of December 8, a woman ordered food from Joseph's Pizza to be delivered to 126 Stratton Street. She asked the owner to make sure that the delivery person brought change for a $50 bill. She left the telephone number belonging to Mills's mother. When Holness saw the number, he recognized it

---

[3]The police later discovered that the telephone number was registered to Marilyn Mills, the mother of Keith and Kenisha Mills, who lived at 132 Stratton Street.

as the one given by the woman whose order they previously decided not to deliver. The police were called and they attempted to make an undercover delivery, but the man at 126 Stratton Street told the officer posing as the delivery person that no one had ordered any food.

On the evening of December 10, Sadrac Noel, an employee of the China Sea restaurant, delivered an order of food to 120 Stratton Street. Once again, the call-back number belonged to Keith Mills's mother. When Noel arrived at Stratton Street, he was approached by two men in hooded sweatshirts whom he later identified as Keith Mills and the defendant. They offered to summon the person who had ordered the food. Mills went upstairs and the defendant waited downstairs with Noel. A few minutes later Mills came downstairs and grabbed the food. The defendant, according to Noel, pulled out something shiny that looked like a gun. Noel ran back to his car, drove back to the China Sea and reported the robbery to his employer. His employer decided not to report the incident to the police because the robbers had not hurt him or taken any money.

On the evening of December 13, 1994, the Yum Yum Chinese restaurant (Yum Yum) received a call from a man at a pay telephone requesting that food be delivered to 120 Stratton Street. He was informed that the restaurant did not take orders from a pay telephone. The man later called again and left a telephone number that was registered to the defendant's father.

Letri Nguyen, an employee of Yum Yum, called the number before delivering the food. A young man answered the telephone and Nguyen told him the food was on its way.

When Nguyen arrived, he saw a young man standing in front of 120 Stratton Street. The man walked up to the passenger side of Nguyen's car and pulled out a gun. When Nguyen tried to drive away, the man shot him in the head, blinding him permanently.

The defendant was arrested on January 4, 1995. In a statement to the police he admitted that he had ordered food from Yum Yum on the night that Nguyen was shot and that he had given his home telephone number as the call-back number. He had placed the order from the Mills home at 132 Stratton Street. The defendant claimed, however, that after waiting some time for the food to arrive, he walked home to 78 Ames Street and canceled the order. He denied participating in any of the crimes.

On January 5, 1995, Silveira selected the defendant's

photograph from an array of nine photographs and identified him as the person who robbed him. Noel selected the defendant's photograph from an array of eight photographs and stated that he looked like the man who had waited downstairs with him but he was not certain. Holness selected the defendant's photograph from an array of eight photographs.[4]

The theory of the defense was that the victims of the various crimes had misidentified the defendant as the person who robbed them. In support of that theory, the defendant pointed out that Silveira had described the perpetrator as having several little elastics in his hair, and Holness had described the robber as wearing his hair in braids or dreadlocks. However, at the time of his arrest, the defendant's hair had neither. Further, a security officer at the defendant's high school testified that the defendant's hair was short when the robberies occurred and that the defendant never wore his hair in elastics, braids, or corn-rows.

The defendant's father also testified. Mr. Howell stated, among other things, that during the period in question, the defendant's hair was short. He further claimed that the defendant did not own or wear any hooded sweatshirts, the apparel that Noel described as being worn by the persons who robbed him.[5] Mr. Howell also testified that it was he, not his son, who answered the call from Yum Yum and informed the person that he had not ordered any food, thereby contradicting Nguyen's testimony that a young man had answered the call-back.

Finally, the defendant elicited testimony that the police were aware that two other men, Errol Wilkerson and Damien Bowers, knew Kenisha Mills and generally fit the descriptions of the robbers. The defendant introduced in evidence photographs of the two men.

We now turn to a discussion of the issues raised by the defendant.

A. *The cross-examination of Mr. Howell.* On appeal, the defendant raises two issues concerning the prosecutor's cross-examination of Mr. Howell. He claims that the judge committed

---

[4]Prior to trial, the defendant filed a motion to suppress the victims' identification of the defendant. After an evidentiary hearing, a judge denied the motion. The defendant does not challenge that ruling on appeal.

[5]On cross-examination, Mr. Howell was shown a photograph taken at the time of the defendant's booking, and he conceded that it showed the defendant wearing a hooded garment.

error in allowing the prosecutor to question the witness about (1) his alleged lack of cooperation with the police and (2) his alleged attempt to intimidate a witness.

1. *The father's alleged lack of cooperation with the police.* As part of the Commonwealth's case, a Detective Martel testified, without objection, that he went to the defendant's home prior to his arrest. The defendant was not at home, and Martel requested the defendant's father, Mr. Howell, to bring the defendant to the police station to be interviewed. According to Martel, Mr. Howell agreed to do so, but they never appeared at the station. Eight days later, Martel returned to the defendant's home and asked Mr. Howell why he had not yet brought the defendant in for questioning. According to Martel, Mr. Howell replied that he thought Martel was going to interview the defendant at home. Mr. Howell agreed to try to arrange the interview that evening, but neither he nor the defendant contacted the police.

Testifying for the defense, Mr. Howell denied that he had agreed to Martel's request. He then stated that after Martel returned and berated him for not bringing the defendant to the station, he called a lawyer who informed him that he had no legal obligation to bring his son in for questioning.

On cross-examination, the prosecutor began probing Mr. Howell about his conduct in response to Martel's request. The defendant objected, claiming that the father's actions could be construed as consciousness of guilt on the part of the defendant. The prosecutor argued that the evidence was admissible because it went to the father's credibility and because it indicated consciousness of guilt on the part of the defendant, who refused to be interviewed by the police. The judge ruled that the evidence was admissible on the issue of the father's credibility because it showed that "this father may not have been so cooperative, . . . [and] may not be the . . . upstanding citizen that [defense counsel] would like the jury to believe that he is."[6] The judge, however, warned the prosecutor not to argue to the jury, in his closing statement, that the father's conduct in failing or refusing to respond to Martel's request constituted consciousness of guilt on the part of the defendant.

On appeal, the defendant argues that the evidence concerning

---

[6]We read the judge's comment to mean that she overruled the objection on the ground that the prosecutor's questions were relevant; they went to the witness's credibility and possible bias.

his father's failure to bring him to the police station was not relevant and was prejudicial because it showed a consciousness of guilt on the part of the defendant. The Commonwealth argues that the evidence was admissible because it demonstrated that Mr. Howell was biased against the police or biased in favor of his son or both, and thus had a bearing on his credibility.

The claim that the evidence indicated that Mr. Howell was biased against the police was tenuous, at best. Mr. Howell was not under any obligation, legal or otherwise, to honor Martel's request to bring the defendant to the police station to be questioned by the police. Further, the prosecutor had already elicited, through his questions, evidence of bias that Mr. Howell harbored in favor of his son. Therefore, we hold that it was error to admit in evidence Mr. Howell's refusal or failure to cooperate with the police.

The error did not, however, rise to the level of a substantial risk of a miscarriage of justice, for two reasons:[7] (1) the prosecutor heeded the judge's warning and did not comment in his closing argument that Mr. Howell's failure or refusal to cooperate with the police constituted consciousness of guilt on the part of the defendant; and (2) the jury's acquittal of the defendant on three indictments (two robbery indictments and one indictment for armed assault with intent to murder), persuades us that the error did not "materially influence[]" the guilty verdicts. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), quoting from *Commonwealth* w. *Freeman*, 352 Mass. 556, 564 (1967).

2. *The father's alleged attempt to intimidate a witness.* During the course of his cross-examination of Mr. Howell, the prosecutor elicited testimony that Mr. Howell and the defendant's brother, Damien, had gone to Pete's Courthouse Deli to question Silveira about his identification of the defendant as the person who had robbed him.

The prosecutor asked the witness whether the purpose of the visit was to "confront" or "influence" Silveira in his identification of the defendant. Mr. Howell insisted that the only reason he went there was to find out how Silveira happened to identify

---

[7]We are examining the error under the substantial risk of miscarriage of justice standard because Martel's testimony about his visits to the defendant's home and his conversations with Mr. Howell came in without objection. Defense counsel's later objection to the prosecutor's cross-examination of Mr. Howell was too late to preserve an objection to the testimony. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 569-572 (1985).

the defendant as the robber. The prosecutor then asked Mr. Howell for his and Damien's height and weight. The defendant objected to the line of questioning on the ground that the prosecutor was trying to show, by innuendo, that Mr. Howell and his son Damien were attempting to intimidate Silveira when there was no evidence that such was their purpose. The prosecutor argued that the confrontation showed the lengths to which Mr. Howell would go to protect his son.

The judge overruled the defendant's objection, after which the prosecutor asked Mr. Howell if he had questioned Silveira about the accuracy of his identification. Mr. Howell answered that Silveira stated that he was "sure" that the defendant was the right person. The prosecutor then asked Mr. Howell whether he or his son had asked "how much it would take for [Silveira] to go away." Mr. Howell denied that either of them had made such a statement.

"It is error for a prosecutor 'to communicate impressions by innuendo through questions which are answered in the negative . . . when the questioner has no evidence to support the innuendo.' " *Commonwealth* v. *Fordham*, 417 Mass. 10, 20 (1994), quoting from *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975), quoting from ABA Standards Relating to the Prosecutor Function § 5.7(d) (Approved Draft 1971). See *Commonwealth* v. *Christian*, 430 Mass. 552, 561 (2000).

Here, it is clear that the prosecutor was attempting to create the impression that the purpose behind the Howells' visit was to intimidate Silveira or to bribe him to change his testimony. The judge should have immediately stopped the line of questioning and asked the prosecutor for the basis of his questions, particularly when the Commonwealth never questioned Silveira about any "confrontation" with Mr. Howell and his son. See *Commonwealth* v. *Christian, supra* at 562 (judge should have tested the grounds for prosecutor's cross-examination).

Because there was no basis in the evidence for the prosecutor's line of questioning, the judge committed error in overruling the defendant's objection. Therefore, we must determine whether the error influenced the jury, "or had but very slight effect." See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353

(1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).[8]

The only robbery of which the defendant was convicted was that of Silveira. The jury could have based its guilty verdict, not on the erroneously admitted evidence, but rather on the evidence that Silveira, unlike the other robbery victims, had seen the defendant in his store prior to the robbery. Moreover, the not guilty verdicts on the other robberies indicated that the jury did not reject all of Mr. Howell's testimony. In regard to those crimes, Mr. Howell's testimony refuted Holness's and Noel's identification of the defendant as the perpetrator.

Therefore, we conclude that the judge's error in not excluding the prosecutor's improper questions did not prejudice the defendant.

B. *The rebuttal evidence.* After the defendant placed in evidence the photographs of Wilkerson and Bowers (on the theory that the two men matched the descriptions of the robbers), a detective showed the photographs to Silveira, Holness, and Noel. She asked them if anyone in the photographs looked like any of the robbers. None of the victims recognized the two men, although Holness told the detective that Bower's face had the same shape as one of the perpetrators. Over the defendant's objection, the detective was allowed to relate this information as a rebuttal witness.

On appeal, the defendant claims that the midtrial identification procedure did not comport with due process because it was unreliable. Therefore, he claims that the detective's testimony should have been excluded.[9]

The trial judge had broad discretion to allow the Com-

---

[8]In his closing argument, the prosecutor made a brief reference to the meeting between Silveira, Mr. Howell, and his son Damien. He asked the jurors to ask themselves if Mr. Howell went to speak to Silveira "just to set his own mind at ease, or did he go out there to influence . . . Silveira." The prosecutor asked the jurors to "[p]ut yourselves in . . . Silveira's shoes." "How would [Silveira] feel when [Mr.] Howell came to that location and asked him questions with his son?" The defendant objected to this portion of the prosecutor's argument. His objection was overruled by the judge.

By itself, the reference in the closing argument did not constitute reversible error, but we have considered it in determining the effect of the judge's error on the jury in allowing the prosecutor to use innuendo in his questions.

[9]The defendant did not challenge the detective's testimony on hearsay grounds, possibly for strategic reasons. If the judge had upheld his objection on hearsay grounds, the Commonwealth could have recalled the victims as

monwealth to introduce evidence that rebutted the defendant's theory of defense. *Commonwealth* v. *Johnson*, 41 Mass. App. Ct. 81, 89 (1996). Because the defendant had elicited evidence that the police were aware that Wilkerson and Bowers knew Kenisha Mills and generally fit the description of the robbers, the judge acted within her discretion in allowing the prosecutor to rebut that evidence with evidence that the victims had not recognized the two men as the perpetrators.

Moreover, we reject the defendant's claim for the reason that the procedure did not produce any identification at all. We think that a procedure designed to *exclude* suspects does not evoke the same concerns as a procedure that leads to the identification of a person as the individual who has allegedly committed a crime. As far as we are aware (and we have not been guided to any decision that states otherwise), the only situation in which a judge must first evaluate the reliability of identification evidence before allowing its submission to the jury is when a defendant claims that his identification was obtained by "a confrontation that was unnecessarily suggestive and thus offensive to due process." *Commonwealth* v. *Botelho*, 369 Mass. 860, 866 (1976).

Here, the defendant was able to cross-examine the detective on the details of the procedure and, therefore, was able to place before the jury any possible suggestiveness involved in the procedure used by the detective. That tactic, and defense counsel's argument to the jury that the method employed by the detective was suggestive, obviously found some fertile ground as indicated by the jury's rejection of two of the three identifications of the defendant by the victims. There was no error.

C. *The prosecutor's closing argument.* The defendant claims that certain remarks in the prosecutor's closing argument were so prejudicial that a new trial is required. In particular, the defendant argues that the prosecutor improperly (1) stated that "the police are not on trial here," (2) commented on the credibility of the Commonwealth and defense witnesses, and (3) shifted the burden of proof in his remarks.

The defendant did not object to the prosecutor's comment that Detective Martel was "not on trial here." It has been held that such comments by prosecutors, although " 'unnecessary,' do not create a substantial [risk] of a miscarriage of justice."

witnesses and repeated the identification procedure conducted by the detective, this time before the jury.

*Commonwealth* v. *Shea,* 401 Mass. 731, 738 n.3 (1988), quoting from *Commonwealth* v. *Boyer,* 400 Mass. 52, 59 (1987).

A prosecutor may properly attack the credibility of witnesses. *Commonwealth* v. *Donovan,* 422 Mass. 349, 357 (1996). We have examined the prosecutor's comments in that regard in "light of the 'entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.' " *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 746 (1990), quoting from *Commonwealth* v. *Lamrini,* 392 Mass. 427, 432 (1984).

We note that a few of the prosecutor's comments pertaining to the credibility of witnesses were the subject of objections, while others were not. Regardless, if some of the comments were indeed error they did not warrant a new trial in view of the judge's careful instructions to the jury that only they decide the credibility of a given witness.

The prosecutor should not have argued that the defendant could have shown the photographs of Wilkerson and Bowers because it was potentially burden-shifting. However, immediately after the prosecutor finished his closing argument, the judge stepped in and gave an instruction specifically aimed at the prosecutor's error. The defendant did not thereafter object to the curative instruction.

The instruction was timely, explicitly addressed the error and emphasized that the defendant had no burden to produce evidence.

In sum, we have examined all of the defendant's claims in regard to the prosecutor's closing argument and hold that a new trial is not warranted.

*Judgments affirmed.*