NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1125

COMMONWEALTH

vs.

TAMAGNINE C. DOSSANTOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from his convictions, after a jury trial, of assault and battery on a police officer (ABPO), G. L. c. 265, § 13D; assault and battery by means of a dangerous weapon (ABDW), G. L. c. 265, § 15A (b); and resisting arrest, G. L. c. 268, § 32B.[1]  He raises three issues on appeal.  First, he argues that the prosecutor asked questions on cross-examination that were designed to elicit opinions about the credibility of other witnesses.  Second, he argues that the officers improperly offered testimony touching on the ultimate

_____

[1] The defendant was charged with two counts of ABPO (Officer Ford and Officer Boehner), ABDW (door; Officer Ford), disorderly conduct, disturbing the peace, threatening to commit a crime, and resisting arrest.  He was ultimately found guilty of ABPO with respect to Officer Ford, ABDW, resisting arrest, and disturbing the peace (which was guilty-filed).  The defendant was acquitted of ABPO with respect to Officer Boehner and of threatening to commit a crime.

issue of the defendant's guilt.  Finally, he argues that unpreserved errors in the prosecutor's closing created a substantial risk of a miscarriage of justice.  We affirm.

Background.  We summarize the facts the jury could have found, reserving additional facts for later discussion.  See Commonwealth v. Hart, 493 Mass. 130, 131 (2023).  On February 3, 2013, police responded to the defendant's home after his then-wife reported that he was unwilling to transfer the couple's youngest child in accordance with a court-ordered custody schedule.  The defendant did not comply with the officer's instruction that the child be released to the wife.  Instead, an argument between the officer and the defendant ensued and, eventually, the defendant "chest bumped" the officer, pushing him into the railing by the staircase.  The officer then told the defendant, "okay, I've already told you to stop yelling. Now you've just assaulted me, so you're under arrest."  While the officer was trying to place handcuffs on the defendant, the defendant closed the apartment door on the officer's arm four or five times.  A physical struggle followed, and the officer eventually pressed the emergency button on his radio to alert all available police units and personnel to come to his location.  Eventually, eight other officers arrived, and the defendant was subdued and handcuffed.

Discussion.  The defendant argues that the prosecutor improperly cross-examined him and his mother in a fashion designed to have them opine on the credibility of the police officers' testimony.  "'[A] witness cannot be asked to assess the credibility of his testimony or that of other witnesses.'" Commonwealth v. Alphas, 430 Mass. 8, 17 (1999), quoting Commonwealth v. Triplett, 398 Mass. 561, 567 (1986).  The defendant argues that a series of questions asking that he confirm his own version of events or that of the officers was the functional equivalent of asking him to opine on the credibility of the officers' conflicting version of what happened.[2]  He makes a similar argument regarding the cross-examination of his mother, which included questions designed to have the mother confirm that certain events occurred as either the defendant or the mother had previously testified.  More specifically, the prosecutor asked the mother to confirm that she saw a uniformed officer punch the defendant in the nose,

_____

[2] The defendant points to the following questions:  "You're in the hallway with the officer, and then he just punches you right in the face?"; "Isn't it true you said, 'F-you.  This is America.  I ain't doing nothing.'  Isn't that true?  Isn't that more accurate[?]"; "[Y]ou're in the hallway with the officer, and then he just punches you right in the face?"; "So this officer is in full uniform, told you you're under arrest, and you're trying to shut the door on him.  Correct?"; and "And even though you're on the ground and you have your arms behind your back, it's your testimony that three uniformed police officers jumped on your back.  Correct?"

3

that a "bunch of officers" jumped on top of him, and that an officer put his hand over her mouth as she was holding a one year old child and told her "to be quiet."

The defendant argues that this line of questioning was improper because the "critical issue" before the jury was whether to accept the version of events given by the officers or that given by the defendant and his mother. See Alphas, 430 Mass. at 17, quoting Triplett, 398 Mass. at 564. We disagree. This is not a case where the witnesses were asked to opine directly on another witness's testimony by asking whether it was "correct" or whether the other witness had "lied." Contrast Alphas, supra at 19; Triplett, supra at 566 n.5; Commonwealth v. Long, 17 Mass. App. Ct. 707, 708 nn.1, 2 (1984).

Instead, the witnesses were merely asked whether certain events had occurred as previously testified to either by themselves or another witness. "It was proper for the prosecutor to point out, through this line of questioning, that there were inconsistencies between the defendant's testimony and that of the arresting officer, so long as the defendant was not asked to assess the credibility of the arresting officer's testimony." Commonwealth v. Johnson, 412 Mass. 318, 327-328 (1992), citing Commonwealth v. Dickinson, 394 Mass. 702, 706 (1985).

The defendant next argues that the police officers improperly testified on the ultimate question of the guilt of the defendant. "[W]e have long recognized that '[n]o witness, including a police witness, may testify as to a defendant's guilt or innocence.'" Commonwealth v. Canty, 466 Mass. 535, 540 (2013), abrogated on other grounds by Commonwealth v. Doughty, 491 Mass. 788 (2023), quoting Commonwealth v. Hamilton, 459 Mass. 422, 439 (2011). The defendant's argument rests on two pieces of testimony. The first came from the first responding officer, who testified on direct examination that, after the defendant chest bumped him, he told the defendant, "I've already told you to stop yelling. Now you've just assaulted me, so you're under arrest." The second piece of testimony came from the second officer, who testified that he told the defendant that "he was going to be placed under arrest and not to resist," that the defendant went into a "noncompliant handcuffing position," and that "[a] compliant person would just put their hands behind their backs, and you could apply the handcuffs." The defendant argues that the jury, having heard this testimony, would conclude without examining the totality of the evidence that the defendant had committed an assault and resisted arrest. See Commonwealth v. Wardsworth, 482 Mass. 454, 477 (2019), quoting United States v. Meises, 645 F.3d 5, 17 (1st Cir. 2011) ("The usurpation problem that arises when a witness testifies to

5

opinions based on evidence that was also available to the jurors is compounded when the witness is a government agent whose testimony -— as here -— is effectively a judgment on the question of guilt or innocence").  Because there was neither an objection nor a motion to strike, we review for whether the testimony, if admitted in error, created a substantial risk of a miscarriage of justice.  See Commonwealth v. Saulnier, 84 Mass. App. Ct. 603, 607 (2013).

It is generally advisable for a witness not to refer to an incident as an "assault" when the defendant is on trial for assault and battery.  See Commonwealth v. Duarte, 97 Mass. App. Ct. 268, 276 (2020).  Additionally, it is generally preferable to avoid the use of the word "resisting" when describing a defendant's actions during a trial for resisting arrest.  See Commonwealth v. Maylott, 65 Mass. App. Ct. 466, 470 (2006).  However, we discern no risk that the isolated references by the officers in this case created a substantial risk of a miscarriage of justice.  To begin with, the jury knew that the defendant was on trial for assault charges and for resisting arrest.  Accordingly, the fact that the police witnesses testified that they told the defendant at the scene that he was being arrested on such charges added little, if anything, to the mix.  To be sure, the second officer should have steered away from offering a conclusory opinion as to what "compliant people"

do when being arrested, but the officer's testimony did not directly offer an opinion on the defendant's guilt.  See Commonwealth v. Grissett, 66 Mass. App. Ct. 454, 458 (2006), quoting Commonwealth v. Tanner, 45 Mass. App. Ct. 576, 581 (1998) ("Expert testimony must be explanatory, and not 'presented in conclusory form . . . in terms of whether [the] defendant did or did not commit a particular offense,' to avoid infringing on the defendant's right to a fair trial").  See also Canty, 466 Mass. at 543, citing Commonwealth v. MacDonald, 459 Mass. 148, 163 (2011) ("Provided that a witness does not directly offer an opinion regarding the defendant's guilt or innocence in a criminal case . . . we have no rule in Massachusetts prohibiting an opinion that touches on an ultimate issue").  Moreover, the evidence on the charges was strong, the defendant's and his mother's countervailing versions of events were at odds with each other and bore signs of inherent implausibility, and neutral evidence corroborated the officer's testimony.  In these circumstances, there is little reason to think the jury would have substituted the officer's testimony for their own independent assessment of the evidence as a whole. We consider further that the judge correctly instructed the jury that the Commonwealth bore the burden to prove beyond a reasonable doubt the elements of each of the offenses, as well

as on the law of self-defense.  See Commonwealth v. Dufresne, 489 Mass. 195, 208 (2022).

Finally, the defendant argues that the prosecutor made improper arguments during closing, resulting in a substantial risk of a miscarriage of justice.  See Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 511 (2022).  An error during closing argument creates a substantial risk of a miscarriage of justice "if we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 91 (2019), quoting Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016).  We have no such doubt here.

First, the defendant argues that the prosecutor improperly vouched for the police's credibility by stating,

> "I mean, you have uniformed police officers, veterans on the force, midday, full uniform. . . .  And these people are going to risk their livelihoods by punching the defendant in the nose with absolutely no provocation?  Does that make any sense to you whatsoever?  And if they're not telling the truth about that, if you found that, how much can you trust the rest of what they say?"

"Improper vouching occurs if 'an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury.'" Commonwealth v. Kee, 449 Mass. 550, 560 (2007), quoting Commonwealth v. Ortega, 441 Mass. 170, 181 (2004).  The prosecutor offered no such personal belief here; instead, he

8

pointed to facts and assumptions that tended to bolster the credibility of the officers' testimony while undermining the plausibility of the defendant's countervailing version of events. Indeed, the prosecutor introduced this portion of his closing by stating, "[n]ow, [the defendant and his mother] both kind of share the story, and respectfully it doesn't make any sense whatsoever." In this sense, the prosecutor's statements were arguably "within the prosecutor's right of retaliatory reply" given that defense counsel had argued that the officers should not be believed during his closing argument. Kee, supra, quoting Commonwealth v. LeFave, 407 Mass. 927, 939 (1990).

That said, the argument was arguably improper because it asked the jury to credit the officers' credibility based on an assumption that police officers will not engage in conduct that endangers their livelihood. There was no evidence to support this statement. See Commonwealth v. Zuluaga, 43 Mass. App. Ct. 629, 647-648 (1997). However, the statement was not objected to and we see no substantial risk of a miscarriage of justice flowing from it. Among other things, the verdict shows that the jury were not tempted to credit the officers' testimony wholesale. See Commonwealth v. Howell, 49 Mass. App. Ct. 42, 48 (2000), quoting Alphas, 430 Mass. at 13 ("[T]he jury's acquittal of the defendant on three indictments . . . persuades us that

9

the error did not 'materially influence[]' the guilty verdicts").

The defendant also argues that the prosecutor misstated the evidence when he stated that the wife "was out on th[e] porch for ten to twenty minutes, and it's kind of an explanation as to why she didn't see anything going on at that time."  The defendant argues that this statement is at odds with the wife's testimony because (a) the wife did not testify to the amount of time she was on the porch, (b) she heard the police say "F-U" to the defendant, (c) she heard an officer tell the mother to "shut up," and (d) she saw the police on top of the defendant "[w]hen [she] was going up the stairs."  The defendant's argument is not fair to the transcript.  To begin with, when asked whether she was on the porch for ten or twenty minutes, the wife testified "Probably.  Something around there."  To be sure, the wife also testified that she could not tell how long she was on the porch. But that does not mean that the prosecutor's argument was not supported by the evidence.  In addition, because the prosecutor's statement was limited to what the wife <u>saw</u> while she was on the <u>porch</u>, there is no contradiction with the wife's testimony as to what she <u>heard</u>, or as to what she saw while she was on the <u>stairs</u>.

The defendant next argues that the prosecutor improperly disparaged the self-defense claim and wrongly shifted the burden

10

to the defense when he argued that "you can't trust that self-defense claim."  See Commonwealth v. Walters, 485 Mass. 271, 289 (2020).  Read in context, however, the statement clearly refers to the theme that the prosecutor was then developing, which was that the defendant had not done what was reasonably necessary to avoid physical contact.  For this reason, the prosecutor argued, the self-defense claim could not be trusted.  We see no error.  See Walters, supra, quoting Commonwealth v. Simpson, 434 Mass. 570, 586 (2001) ("The realm of appropriate 'forceful' advocacy includes commentary on the relative merits of the defendant's arguments").  Compare Commonwealth v. Gentile, 437 Mass. 569, 581 (2002) (improper for prosecutor to label defense's strategy of accusing three other people of committing the crime "despicable").

Finally, the defendant argues that the prosecutor misstated the law when he told the jury that "an assault and battery is just [an] intentional touching," and by failing to mention that the defendant was permitted to use reasonable force to protect himself if unreasonable or excessive force was used during the arrest.  See Commonwealth v. Ridley, 491 Mass. 321, 328 (2023), quoting Commonwealth v. Bins, 465 Mass. 348, 367 (2013) ("In closing argument, '[l]awyers shall not and must not misstate principles of law'").

11

The fact that the prosecutor did not elaborate on all of the elements of the offenses and defenses did not amount to a misstatement of law. To begin with, the prosecutor informed the jury that the judge would instruct them on the law. In addition, the prosecutor was permitted to focus his argument on the aspects of the applicable law to which he wished to draw the jury's attention in particular. See Commonwealth v. Feroli, 407 Mass. 405, 409 (1990). Moreover, even were we to assume otherwise, there is no claim that the judge did not properly instruct the jury.[3] We presume that the jurors followed the judge's instructions, see Commonwealth v. Anderson, 445 Mass. 195, 214 (2005), and accordingly see no risk of harm flowing from the fact that the prosecutor did not fully detail the law in his closing.

Judgments affirmed.

By the Court (Wolohojian, Englander & Brennan, JJ.[4]),

Paul Little

Assistant Clerk

Entered: April 3, 2024.

---

[3] The defendant suggests that the judge should have repeated the instructions when answering the jury's targeted questions, but cites to no case imposing such a duty on the judge. To the contrary, "[t]he necessity, extent, and character of supplemental instructions in response to a jury request are matters within a trial judge's discretion" (citation omitted). Commonwealth v. Johnson, 429 Mass. 745, 753 (1999).

[4] The panelists are listed in order of seniority.