NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1028

COMMONWEALTH

vs.

MICHAEL COLLINS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of assault and battery and assault and battery with a dangerous weapon.[1]  On appeal the defendant argues that he is entitled to a new trial because the prosecutor's closing argument was improper.  We affirm.

Background.  The defendant and his girlfriend first met after messaging each other through Instagram and then in person

---

[1] The defendant was indicted on three counts.  The first and second counts, assault and battery on a child causing substantial bodily injury and assault and battery by means of a dangerous weapon, relate to a child victim.  The third count, assault and battery by means of a dangerous weapon, relates to an adult victim.  The jury acquitted the defendant on the first count, convicted him of the lesser included offense on the second count, and convicted him on the third count.

at the defendant's birthday party in May 2015.  By July 2015,
the girlfriend was pregnant with her second child, Sam,[2] and
called the defendant to inform him that he was the father.  One
month after Sam was born, the girlfriend, Sam, and Kim,[3] the
girlfriend's three-year-old daughter from a previous
relationship, moved into the defendant's residence.

The girlfriend's relationship with the defendant became a
"nightmare" when he became physically violent.  The first time
the defendant hit the girlfriend, he "smacked" her with an open
hand because he was upset that she "raised [her] voice" at his
grandmother.  The defendant became angry with the girlfriend's
parenting decisions and when he realized that the girlfriend
would not "spank" Kim, "he got up and . . . did it himself."
The girlfriend testified that if Kim "peed on herself" without
letting him know, the defendant would "freak out" and "lay her
on the bed and spank her with the belt."[4]  The girlfriend told
the defendant not to spank Kim, then "one day he hit [the
girlfriend] with the belt . . . across [her] back."  Kim was
four years old when the girlfriend saw the defendant "on top of
[the child] . . . punching her . . . leg, face, back, [and]

---

[2] A pseudonym.

[3] A pseudonym.

[4] Kim was "halfway" toilet trained when she moved into the
defendant's residence but regressed while she lived with him.

arms."  When the girlfriend "tried to stop" the defendant, "it was [the girlfriend's] turn."  The girlfriend escaped the residence with Kim and "ran out with . . . whatever [the girlfriend] had on, no shoes, no coat, like nothing."  The defendant's mother followed the girlfriend and Kim "down the street" and offered to take them to "a family member's house," where they stayed for a week or less before the girlfriend took Kim to the hospital.  During this period, Sam remained with the defendant's family.

On February 4, 2017, the girlfriend took Kim to Boston Children's Hospital, where doctors determined to a reasonable degree of medical certainty that Kim was the victim of child abuse.[5]  Kim's doctors observed "multiple scars throughout her body, including on her abdomen, her flank, her back, her buttocks, and covering her arms and her legs and her feet."  Medical imaging scans revealed "bleeding around [Kim's] brain," "on both sides of [her] head," as well as "areas within the scalp that . . . hardened into calcium deposits."  Additional imaging showed that Kim's brain had "atrophied . . . compared to

_____

[5] Dr. Hiu-fai Fong, a physician on the child protection team at Boston Children's Hospital, found multiple "healing fractures of [Kim's] fingers" and "multiple fractures of her . . . spine." Scans of Kim's eyes showed retinal bleeding and cataracts in both eyes that required surgery.

3

[her] prior head imaging."[6]  When hospital employees asked the girlfriend who hurt Kim, the girlfriend said that she did, thinking that statement would help get Sam out of the defendant's residence.  The girlfriend admitted at trial that some of what she told the doctors about her hitting Kim was true and disclosed that she hit Kim "[w]ith [the defendant] behind [her] back" because, if she didn't, "[t]here would be more fighting between [her and the defendant]."

Police officers arrested and questioned the girlfriend when she returned to the hospital the next day.[7]  During her interview, the girlfriend admitted to "disciplining [Kim] with hitting on the hands with just her hand," which escalated to hitting Kim with a "plastic slotted spoon" and a "metal spatula."  The girlfriend said she "used a cord to keep [Kim] in place or keep her tied . . . [and] contained."  During the girlfriend's booking, officers photographed "injuries that she had received from abuse by [the defendant]," including "bruises and markings on her legs, . . . shoulder area, and on parts of her back."  A grand jury indicted the girlfriend on seven

---

[6] When she was approximately two years old, Kim was treated at Boston Children's Hospital for an unrelated injury, for which she had received head imaging.

[7] The Department of Children and Families interviewed the girlfriend and removed Sam and Kim from her custody.

4

counts; each indictment named Kim as the victim.[8]  The girlfriend testified at the defendant's trial.  At that time, her charges were "still pending" and she testified that no one made "any promises" to her regarding the status of her case.  Defense counsel vigorously cross-examined the girlfriend on each charge and confirmed that she "still [had] to face the court for either a trial or . . . sentence."  Defense counsel attempted to elicit testimony from the girlfriend that given her testimony against the defendant, she could "beat the charges against [her]" and avoid trial.

The defendant's counsel argued in closing that the girlfriend had a motive to lie and that "she's hoping that you will convict [the defendant] so that she can make a presentation in her own case to claim that she's a battered woman and that her conduct is the result of being forced to do so by the abuse of men."  The prosecutor responded in her closing, inter alia, that, the girlfriend "inflicted horrific injuries on her child, [and she] is indicted for hitting her child, . . . permitting her child to end up in the condition she was in when she arrived at [Boston Children's] Hospital . . . [and] allowing [the

---

[8] The girlfriend faced one count each of permitting substantial bodily injury to a child; assault and battery with a dangerous weapon causing serious bodily injury; assault and battery on a child causing bodily injury; reckless endangerment of a child; and three counts of assault and battery with a dangerous weapon.

5

defendant] to injure her child."  The prosecutor continued, "Who knows what her defense will be at trial, certainly suspect it will be battered woman, but that's her trial that she will have because no one is letting [her] off the hook."  The defendant failed to object following closing arguments.  After the court gave the final jury instructions and requested to speak to the attorneys, the defendant raised an "issue that [he] neglected to address before[,] . . . an objection to the closing argument that stated that [the girlfriend] will have a trial."  The judge stated that the defendant "raised [the issue in his closing] very clearly" when he "argued that [the girlfriend] was accusing the defendant so that she could have a battered woman defense at her trial."  The defendant responded, "Very well. . . .  All right.  Very well, Your Honor."  Five months after the defendant's sentencing, the girlfriend pleaded guilty to five of her indictments and the Commonwealth entered a nolle prosequi as to the remaining two indictments.

Discussion.  The defendant asserts that the prosecutor "deliberately argued a fact not in evidence and injected her personal beliefs in her closing argument" when she "speculated concerning the disposition of [the girlfriend's] outstanding indictments" because "there was no trial."  We are not persuaded.

When evaluating error in a prosecutor's closing argument,

6

"we consider (1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions."

Commonwealth v. Kater, 432 Mass. 404, 422-423 (2000), citing Commonwealth v. Kozec, 399 Mass. 514, 518 (1987). Because the defendant "acquiesced . . . and specifically indicated he was satisfied" without a curative instruction, we determine whether any error created a substantial risk of a miscarriage of justice. Commonwealth v. Beaudry, 445 Mass. 577, 587 (2005).

"A prosecutor may not misstate evidence or refer to facts not in evidence in a closing argument." Commonwealth v. Goddard, 476 Mass. 443, 449 (2017). Statements made by a prosecutor in closing must be viewed "in light of the entire argument," including "the judge's instruction to the jury and the evidence at trial" (quotation and citation omitted). Commonwealth v. Coren, 437 Mass. 723, 730-731 (2002). Here, the evidence showed that the prosecutor and the defendant acknowledged the potential that the girlfriend's case might not proceed to trial. The prosecutor questioned the girlfriend on her pending charges and confirmed that the Commonwealth made no promises to her in exchange for her testimony. During cross-examination defense counsel recited the girlfriend's charges and tried to prove the girlfriend's testimony was motivated by the

possibility of avoiding trial for her charges. Because the trial record shows that the defendant first questioned the girlfriend on whether she might not stand for trial, the prosecutor's response in closing was fair and appropriate. As a result, there was no error. See Commonwealth v. Lamrini, 392 Mass. 427, 433 (1984) ("[T]he prosecutor's remarks were grounded in the evidence").

Nor did the prosecutor inject her personal beliefs in the closing argument. "[A] prosecutor may properly comment to correct an erroneous impression created by opposing counsel" (quotation and citation omitted). Kozec, 399 Mass. at 519 n.9. Here, defense counsel attacked the girlfriend's credibility in closing and raised the issue that the girlfriend tailored her testimony in hopes of making a favorable presentation in her pending case as a controlled, battered woman. The prosecutor, in turn, argued that the girlfriend was properly indicted and that no one knew what defense she would raise at trial.[9] The argument from the prosecutor was a "fair reply to the

---

[9] To the extent that the defendant asserts, without any record support, that the prosecutor had "knowledge independent of the evidence before the jury," we need not address this argument because it does not rise to the level of adequate appellate argument (citation omitted). Commonwealth v. Kee, 449 Mass. 550, 560 (2007). See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

defendant's closing argument."  Commonwealth v. Smith, 404 Mass. 1, 7 (1989).

Lastly, even assuming that there was error in the prosecutor's closing to which the defendant did not acquiesce, we can conclude with "fair assurance that the error did not influence the jury, or had but very slight effect" (quotation and citation omitted).  Commonwealth v. Correia, 65 Mass. App. Ct. 27, 31 n.4 (2005).  The defendant was found not guilty on count one of his three count indictment and guilty of the lesser included offense for count two.  See Commonwealth v. Howell, 49 Mass. App. Ct. 42, 48 (2000) (error did not materially influence guilty verdicts where jury acquitted defendant on three indictments).

Judgments affirmed.

By the Court (Desmond, Sacks & Brennan, JJ.[10]),

Clerk

Entered:  August 8, 2025.

---

[10] The panelists are listed in order of seniority.